UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

PETERSEN ENERGIA INVERSORA,
S.A.U. and PETERSEN ENERGIA S.A.U.,

    *Plaintiffs-Appellees-Cross-Appellants*,

    v.

ARGENTINE REPUBLIC,

    *Defendant-Appellant-Cross-Appellee*,

YPF S.A.,

    *Defendant-Conditional Cross-Appellant*.

**23-7370 (L)**
**23-7463 (XAP)**
**23-7614 (XAP)**

ETON PARK CAPITAL MANAGEMENT,
L.P., ETON PARK MASTER FUND,
LTD., and ETON PARK FUND, L.P.,

    *Plaintiffs-Appellees-Cross-Appellants*,

    v.

ARGENTINE REPUBLIC,

    *Defendant-Appellant-Cross-Appellee*,

YPF S.A.,

*Defendant-Conditional Cross-Appellant*.

**23-7376 (L)**
**23-7471 (XAP)**
**23-7667 (XAP)**

| | |
|---|---|
| PETERSEN ENERGIA INVERSORA, S.A.U. and PETERSEN ENERGIA S.A.U., | **25-2362** |
| *Plaintiffs-Appellees*, | |
| v. | |
| ARGENTINE REPUBLIC, | |
| *Defendant-Appellant*. | |
| ETON PARK CAPITAL MANAGEMENT, L.P., ETON PARK MASTER FUND, LTD., and ETON PARK FUND, L.P., | **25-2363** |
| *Plaintiffs-Appellees*, | |
| v. | |
| ARGENTINE REPUBLIC, | |
| *Defendant-Appellant*. | |

**The United States of America's Memorandum in Support of Argentina's Motion for Stay of Discovery Pending Appeal**

The United States of America (the "government") respectfully submits this memorandum pursuant to 28 U.S.C. § 517[1] in support of the motion by the Argentine Republic ("Argentina") for a stay of discovery pending appeal.[2]

## Preliminary Statement

Litigation in U.S. courts against foreign states can have significant foreign-affairs implications for the United States and can affect the reciprocal treatment of the U.S. government in the courts of other nations. Such litigation is generally governed by the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 ("FSIA"), which, among other things, makes the property of foreign states in the United States generally immune from execution. Although the Supreme Court held in *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014), that the FSIA does not limit the scope of post-judgment discovery into a foreign state's property, the Court also recognized that there may be other grounds that limit such discovery.

---

[1] Congress has authorized the Attorney General to send "any officer of the Department of Justice . . . to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States." 28 U.S.C. § 517; *see Georges v. United Nations*, 834 F.3d 88, 91 & n.10 (2d Cir. 2016).

[2] The United States is filing this memorandum in the appeals in which Argentina has moved to stay, specifically Nos. 23-7370(L), 23-7376(L), 25-2362, and 25-2363.

The United States has a substantial interest in ensuring that U.S. courts supervising post-judgment discovery into presumptively immune foreign-state property carefully adhere to basic principles of relevance and are sensitive to the significant comity, reciprocity, and foreign-relations concerns raised by potentially burdensome discovery. In this case, plaintiffs made discovery requests in the district court seeking high-level Argentine officials' communications relating to state-owned entities—demands that are inconsistent with considerations of comity and reciprocity that arise in litigation involving foreign sovereigns. Unsatisfied with Argentina's efforts to comply, plaintiffs have now filed a motion in the district court seeking to impose monetary and other sanctions on Argentina. Plaintiffs have also sought information about the location of the sovereign gold reserves held by Argentina's central bank; Argentina asserts those assets are immune from execution as property of a foreign central bank, and also states that it lacks information about the location of gold reserves held by a separate juridical entity.

Intrusive discovery demands into sensitive areas, particularly with respect to sovereign property and communications of foreign officials, coupled with the threat of sanctions and contempt for noncompliance, can cause significant friction with foreign governments and open the door to reciprocal orders against the United States in foreign courts. The United States respectfully submits that courts

4

considering a request to stay discovery in an action against a foreign sovereign should consider comity, reciprocity, and foreign-relations concerns raised by potentially burdensome and intrusive discovery requests propounded to a foreign state or its officials.

## Statement

### A. Factual Background and Relevant Procedural History

Plaintiffs in the *Petersen Energía* and *Eton Park* actions hold judgments totaling more than $16 billion against the Republic of Argentina, entered in September 2023. *See Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15 Civ. 2739, 2025 WL 1796392, at *1 (S.D.N.Y. June 30, 2025). The judgments arise from Argentina's asserted violation of the corporate bylaws of YPF S.A. ("YPF"), a majority state-owned Argentine energy company, in connection with Argentina's expropriation of a majority stake in YPF in 2012.[3] *Id.* at *3.[4]

---

[3] Those judgments are currently *sub judice* on appeal before this Court. *See Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 23-7370(L), *Eton Park Capital Mgmt., L.P. v. Argentine Republic*, No. 23-7376(L) (2d Cir., argued Oct. 29, 2025).

[4] The district court also issued an order directing Argentina to turn over YPF shares to plaintiffs in the United States. *Petersen*, 2025 WL 1796392, at *1, *13. Appeals from the turnover orders are pending, with argument scheduled for April 16, 2026, and the United States has filed amicus briefs in favor of Argentina. *See Bainbridge Fund Ltd. v. Republic of Argentina*, No. 25-1686 (2d Cir.); *Petersen Energía*

5

Following the entry of judgment, plaintiffs have engaged in post-judgment discovery in aid of execution under Federal Rule of Civil Procedure 69.

**Off-Channel Communications.** One category of discovery plaintiffs have sought has been termed "off-channel communications" regarding state-owned entities including Banco Central de la República Argentina, Argentina's central bank ("BCRA"); Banco de la Nación Argentina; YPF; and Aerolíneas Argentinas (together, the "state-owned entities"). (*See* SDNY ECF No. 853 (plaintiffs' submission on sanctions)[5] at 7-11). The off-channel communications encompass communications by Argentine state officials regarding certain state-owned entities using unofficial channels, including WhatsApp and Gmail messages, potentially on those officials' personal devices and accounts. (*See id.* at 1-2, 7).

The relevant officials whose off-channel communications are sought include current and former Argentine ministers and other high-level government officials and advisers.[6] After the district court directed Argentina to produce certain off-

---

*Inversora, S.A.U. v. Argentine Republic*, No. 25-1687 (2d Cir.); *Eton Park Capital Mgmt., L.P. v. Argentine Republic*, No. 25-1689 (2d Cir.).

[5] All references to "SDNY ECF" refer to the docket of the lead case in the district court, *Petersen Energía Inversora S.A.U. v. Argentine Republic*, No. 15 Civ. 2739 (S.D.N.Y.).

[6] The relevant officials include, for instance, the current Minister of Economy, Secretary of the Treasury, Secretary of Economic Policy, National General Treasurer; and the former Minister of Economy, Secretary of Energy, Minister of the Interior, Secretary of Finance, and Secretary of the Treasury. (*See* SDNY ECF No. 889 (Argentina's sanctions opposition) at 8-12 & App'x A).

channel communications in July 2025, Argentina sought reconsideration, which the court denied. *See Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15 Civ. 2739, 2025 WL 2463661, at *1 (S.D.N.Y. Aug. 27, 2025). Argentina has appealed the order; those appeals are scheduled for argument next month. Nos. 25-2362, 25-2363 (2d Cir. to be argued Apr. 16, 2026).

On January 15, 2026, plaintiffs moved for sanctions and contempt on the basis of Argentina's asserted noncompliance with the off-channel communications orders. (SDNY ECF Nos. 852-854). Plaintiffs contend that Argentina has willfully refused to comply with certain portions of the court's orders and requested sanctions including an order precluding Argentina from contesting that the state-owned entities are alter egos of Argentina, and adverse inferences that any off-channel communications not produced would have supported such a finding—as well as monetary sanctions of at least $1 million per day. (*See id.*). Argentina opposed, contending that it has in fact substantially complied with discovery, and as to the off-channel communications discovery in particular, Argentina represents it has produced communications from most of the relevant officials. (*See* SDNY ECF No. 889 at 10-12 & App'x A).

On February 26, 2026, the United States filed statements of interest in the district court opposing plaintiffs' motion for sanctions and contempt, stating the government's positions that (1) plaintiffs' requested preclusion and adverse

inference sanctions are inappropriate both under the Federal Rules of Civil

Procedure and due to comity and reciprocity concerns, and (2) plaintiffs' requests

to impose monetary contempt sanctions are inconsistent with international practice,

and inappropriate in light of foreign-relations and reciprocity concerns, particularly

insofar as they are unenforceable under the FSIA. (SDNY ECF No. 900).

The district court has scheduled an evidentiary hearing addressing the

sanctions motion for April 21-23, 2026, with a pre-hearing conference scheduled

for March 31, 2026. (SDNY ECF No. 884).

**Argentina's Gold Reserves.** In discovery, plaintiffs have also requested

information about BCRA's gold reserves. Argentina has asserted that the reserves

are immune from execution as property of a foreign central bank under the FSIA,

28 U.S.C. § 1611(b)(1), and also that the sovereign does not have information

about the location of the gold reserves, given that they are held by a separate

juridical entity, BCRA. (SDNY ECF No. 861).[7]

---

[7] BCRA has legal personality separate from Argentina and, as an agency or
instrumentality of Argentina, is presumptively entitled to immunity from the
jurisdiction of U.S. courts. *See* 28 U.S.C. §§ 1602, 1603(a)-(b), 1604.
"[G]overnment instrumentalities established as juridical entities distinct and
independent from their sovereign should normally be treated as such," and the
FSIA does "'not permit execution against the property of one agency or
instrumentality to satisfy a judgment against another'" unless the plaintiff
overcomes that presumption. *First National City Bank v. Banco para el Comercio
Exterior de Cuba*, 462 U.S. 611, 626-28 (1983) ("*Bancec*") (quoting H.R. Rep. No.
94-1487, at 29-30 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6628-29). This

On January 21, 2026, plaintiffs requested that the district court compel Argentina to provide a sworn statement regarding the location of the gold reserves, and to direct an evidentiary hearing if Argentina claimed it lacks adequate information to do so. (*See* SDNY ECF No. 858). On January 29, 2026, the court directed Argentina to provide an affidavit identifying the countries and accounts in which Argentina's gold reserves are located, and indicated that it would call for live testimony if Argentina's witness indicated that the information could not be provided. (*See* SDNY ECF Nos. 869, 870). The district court has since confirmed that the April 21-23 evidentiary hearing will cover the gold reserves as well. (ECF No. 884).

## B.  The District Court's Order Denying a Discovery Stay

In the midst of these proceedings, Argentina moved in the district court to stay further post-judgment discovery. (SDNY ECF No. 865). Plaintiffs opposed. (SDNY ECF No. 874).

---

Court has concluded that it is appropriate to limit discovery into the property and finances of a separate instrumentality of a foreign-state judgment debtor unless the plaintiff has made a threshold showing that there is reason to think a separate juridical entity is an alter ego of the state and accordingly liable for its judgment. *See, e.g.*, *Seijas v. Republic of Argentina*, 502 F. App'x 19, 20-21 (2d Cir. 2012) (noting that the "district court correctly recognized the comity concerns implicated by allowing jurisdictional discovery from a foreign sovereign" and holding that "plaintiffs' burden was to demonstrate a reasonable basis for not according [Banco de la Nación Argentina] the presumption of separate legal identity from Argentina" (quotation marks omitted)); *see also Bancec*, 462 U.S. at 626-28.

On February 19, 2026, the district court denied the motion. *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15 Civ. 2739, 2026 WL 479954, at *1 (S.D.N.Y. Feb. 19, 2026). The court first held that the motion was in fact a "renewed attempt to obtain [an] unbonded stay" of the judgments, or an improper motion for reconsideration of the court's prior discovery orders, and that Argentina had not met the standard for reconsideration. *Id.* The court further held that Argentina was not entitled to an equitable stay. *Id.* at *1-2.

Argentina now moves for a stay of discovery pending appeal.

### Argument

The United States respectfully submits this filing in support of Argentina's motion to stay discovery pending appeal. One of the factors a court must analyze in considering a stay request is " 'where the public interest lies.' " *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). In the view of the United States, in actions involving foreign state litigants, courts should take comity and reciprocity concerns into account when considering the public interest factor.

As this Court has previously held, "Argentina—like all foreign sovereigns— is entitled to a degree of grace and comity." *Aurelius Capital Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16, 18 (2d Cir. 2014). In cases involving foreign states, "discovery should be ordered circumspectly and only to verify

allegations of specific facts crucial to an immunity determination." *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007) (quotation marks omitted).

In its 2014 decision in *NML Capital*, the Supreme Court addressed the "single, narrow question" of whether the FSIA limits a district court's ordinary discretion to order discovery into a judgment debtor's assets when that debtor is a foreign state. 573 U.S. at 140. The Court concluded that it does not, reasoning that no provision of the FSIA explicitly "forbid[s] or limit[s] discovery in aid of execution," and refusing to imply a discovery limitation from the general rule under the FSIA that a foreign state's property is immune from attachment or execution unless a specific statutory exception applies. *Id.* at 142-43. The Supreme Court made clear, however, that its ruling "concern[ed] only the meaning of the [FSIA]," and posited that "other sources of law ordinarily will bear on the propriety of discovery requests of this nature and scope, such as settled doctrines of privilege and the discretionary determination by the district court whether the discovery is warranted, which may appropriately consider comity interests and the burden that the discovery might cause to the foreign state." *Id.* at 146 n.6 (quotation marks omitted). The Court also left open the question whether "the scope of Rule 69 discovery in aid of execution is limited to assets upon which a United States court can execute." *Id.* at 140 n.2. Thus, nothing in *NML* counsels

11

against the conclusion that information about a foreign sovereign's assets that are immune from execution is not relevant under Rules 26 and 69, and discovery requests seeking such information should therefore not be enforced. *See* 28 U.S.C. § 1611 (identifying types of state-owned property, including foreign central bank property, that is categorically excluded from the enumerated exceptions to sovereign immunity from attachment and execution at § 1610).

Permitting extensive and intrusive discovery in aid of execution, without regard to whether any of the property inquired into may actually be subject to execution in U.S. courts under the FSIA, could impose significant burdens on the foreign state and impugn its dignity. Foreign states may be acutely sensitive to the invasiveness of such discovery requests because "the scope of American discovery is often significantly broader than is permitted in other jurisdictions." *Société Nationale Industrielle Aérospatiale v. U.S. District Court*, 482 U.S. 522, 542 (1987); *see id.* at 546 (explaining that courts ordering extraterritorial discovery should "demonstrate due respect for . . . any sovereign interest expressed by a foreign state"); Restatement (Third) of Foreign Relations Law of the United States § 442, reporter's note 1 (1987) (noting significant "friction" that can result from extraterritorial discovery requests).

The potentially burdensome and intrusive discovery sought in the district court could also lead to reciprocal adverse treatment of the United States, its

12

officials, and its property in foreign courts. *See National City Bank v. Republic of China*, 348 U.S. 356, 362 (1955) (one basis for foreign sovereign immunity is "reciprocal self-interest"). The U.S. government has a significant presence abroad and is frequently subject to suit in foreign courts. *See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 183 (2017) (noting that "[a]t any given time the Department of Justice's Office of Foreign Litigation represents the United States in about 1,000 cases in 100 courts around the world"). Because "some foreign states base their sovereign immunity decisions on reciprocity," *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 841 (D.C. Cir. 1984), a U.S. court's allowance of unduly broad discovery concerning a foreign state's assets—especially assets immune from execution or attachment by, or beyond the jurisdiction of, U.S. courts—could result in less favorable treatment for the United States in various respects when sued abroad. *See Federal Republic of Germany v. Philipp*, 592 U.S. 169, 184 (2021) (permitting suit against foreign governments in U.S. courts may "produc[e] friction in our relations with other nations and lead[] some to reciprocate by granting their courts permission to embroil the United States in expensive and difficult litigation" (internal brackets and quotation marks omitted)); *cf. Boos v. Barry*, 485 U.S. 312, 323 (1988) (highlighting importance of "concept of reciprocity" in international law and

diplomacy and explaining that respecting diplomatic immunity of foreign states "ensures that similar protections will be accorded").

Broad discovery requests into sovereign assets and the communications of foreign officials—coupled with threats of sanctions or contempt for noncompliance—also threatens harm to the United States' foreign relations more generally. Such discovery is likely to be perceived as highly objectionable and intrusive, and if different district courts reach different results with respect to different foreign states, then a perception of unequal treatment could also arise. In this "vast external realm, with its important, complicated, delicate and manifold problems," *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 319 (1936), perceived affronts to foreign states over discovery issues may result in reduced cooperation in a variety of areas. This risk is accentuated in a case involving an important ally of the United States in the strategically critical Western Hemisphere.

The United States' foreign relations and reciprocity concerns are matters on which particular deference is owed to "the considered judgment of the Executive." *Republic of Austria v. Altmann*, 541 U.S. 677, 702 (2004); *see Sosa v. Alvarez-Machain*, 542 U.S. 692, 733 n.21 (2004) (noting that "there is a strong argument that federal courts should give serious weight to the Executive Branch's view of the case's impact on foreign policy").

## Conclusion

For the foregoing reasons, the United States respectfully in urges the court to

consider comity, reciprocity, and foreign-relations concerns in considering

Argentina's motion to stay discovery pending appeal.

Dated:      March 13, 2026
            New York, New York

Respectfully submitted,

SEAN S. BUCKLEY
Deputy United States Attorney
Southern District of New York
*Acting Under Authority Conferred
by 28 U.S.C. § 515*

By:   /s/ Samuel Dolinger
SAMUEL DOLINGER
BENJAMIN H. TORRANCE
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2677

## Certificate of Compliance

Pursuant to Federal Rule of Appellate Procedure 32(g), the above-named
counsel hereby certifies that this memorandum complies with the type-volume
limitation of the Federal Rules of Appellate Procedure. As measured by the word
processing system used to prepare it, this memorandum contains 2,870 words.